**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JAMES E. HORVATH**                                                                          **PLAINTIFF**

**VS.**                              **CASE NO. 4:07-CV-00113 GTE**

**JIM HALL, et al.**                                                                             **DEFENDANTS**

## ORDER GRANTING SUMMARY JUDGMENT

Before the Court is a Motion for Summary Judgment filed by Separate Defendants Joann Demmitt and Jim Hall.[1] Plaintiff James Horvath, proceeding *pro se*, has responded to the motion. Defendants have filed a reply brief in further support of their motion. The Court concludes, based upon a review of the motion papers and the record in this case, that there is no material issue of fact and that Defendants are entitled to judgment as a matter of law.

Plaintiff James Horvath contends that on October 8, 2005, Defendant Police Officer Jim Hall violated his Fourth Amendment rights by arresting him, on harassment charges, without a warrant or probable cause.[2] Plaintiff further contends that Defendant Hall's allegedly wrongful arrest was caused by inadequate training by Defendant Police Chief Joann Demmitt.

Plaintiff seeks a declaratory judgment and an award of punitive and compensatory damages.

---

[1] These are the only two Defendants remaining in this case.

[2] Plaintiff also named two judges and a prosecutor as defendants, claiming that they violated his constitutional rights while the charges arising out of the allegedly unlawful arrest were pending in court. Those claims were dismissed with prejudice based on judicial and prosecutorial immunity. (*See* Recommended Partial Disposition, Dkt. # 13 and Order adopting same, Dkt. # 17).

- 1 -

**FACTS WITHOUT MATERIAL CONTROVERSY**

The following facts are uncontested. At approximately 5:55 p.m. on October 8, 2005, London Police Officer Hall was dispatched to the intersection of AR Hwy. 333 and U.S. Hwy. 64. There he found the Plaintiff and a deputy sheriff already on the scene. Plaintiff explained to both officers that he was watching for traffic violations in the area and taking pictures of any unlicensed vehicles he observed. More specifically, Plaintiff advised that he "had reason to believe that an unlicensed Oldsmobile car might also pass by the area, and if so, then [he] was going to take pictures." (Pl.'s Aff. at ¶ 5). The deputy sheriff left the scene, leaving only the Plaintiff and Officer Hall.

Plaintiff estimates that he was questioned at the intersection for "about 10 minutes or more" before Officer Hall directed Plaintiff to get in his vehicle. Plaintiff acknowledges that after he informed Officer Hall that his vehicle was parked "down at the fishing spot" (also known as "Lucky Spot"), Officer Hall directed him to get in his patrol car so that he could take Plaintiff to his vehicle. (Pl.'s Aff. at ¶ 8). After arriving at Lucky Spot, Officer Hall continued to question Plaintiff. Officer Hall requested Plaintiff's registration and information on Plaintiff's vehicle, which Plaintiff provided. (Pl.'s Aff. at ¶ 10). Plaintiff acknowledges that Officer Hall advised he was "running some checks" on him.

Plaintiff also showed Officer Hall some photographs of an unlicensed red Oldsmobile driven by Mavis Neal. (Pl.'s Aff. at ¶¶ 2, 10-11). Plaintiff informed Officer Hall "that [Plaintiff] was wondering why the Russellville Police wouldn't stop or cite someone for driving an unlicensed vehicle" and alleged that Russellville Police Officer Charlie Waits knew about the alleged unlawful operation of the vehicle. (Pl.'s Aff. at ¶ 10). Plaintiff further informed Officer Hall that Officer Waits had arrested and threatened Plaintiff on October 2, 2005, and given him a

citation on October 6, 2005. Finally, Plaintiff showed Officer Hall paperwork indicating that he had been terminated for "Intimidation of a co-worker." Officer Hall understood the paperwork to indicate that Plaintiff had been fired for intimidating Mavis Neal.

Officer Hall stated that Plaintiff told him he had been advised not to be around Mavis Neal in the Russellville City limits. In response to this allegation, Plaintiff states:

> "I admit I probably told Officer Hall that [Officer] Charles Waits had told me to stay away from his 'split-tail' or that I would probably wind up with a bullet in my head, but otherwise deny that anyone else told me to stay away from the female."

(Pl.'s Resp. to Def.'s St. of Facts, ¶ ; *See also* Pl.'s Aff. at ¶ 12).

Plaintiff further advised Officer Hall that he had filed an Internal Affairs complaint against Charles Waits and Eric Ezell alleging that they unlawfully arrested him on October 2, 2005. (Pl.'s Aff. at ¶ 13).

After speaking with Prosecuting Attorney David Gibbons to inquire whether Plaintiff could be charged with a felony stalking violation, Officer Hall issued Plaintiff a citation of Harassment, a Class A Misdemeanor under Ark. Code Ann. § 5-71-208(A)(3), (5) and/or (6).

Plaintiff asserts that he was detained at the intersection and the fishing hole for over 20 to 25 minutes. Plaintiff contends that Officer Hall's detention of him violated the Fourth Amendment to the Constitution, the Arkansas Constitution and Arkansas Rule of Crim. P. 3.1.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., "[to] point[] out to the District Court,'" that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. Rule 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving

party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

## DISCUSSION

Plaintiff asserts that Officer Hall detained him without probable cause, thereby violating his rights under the Fourth Amendment of the United States Constitution.[3]  Plaintiff appears to concede that Officer Hall was justified in asking him questions when he arrived initially on the scene, but argues that Officer Hall extended the period of lawful detention by continuing to question Plaintiff after Plaintiff explained that he was "watching for traffic violations and possibly taking pictures of them."  (Pl.'s Aff. at ¶ 20).[4]

Plaintiff also references Arkansas Rule of Criminal Procedure 3.1, which provides that an officer may stop and detain a person whom he reasonably suspects is about to commit a felony or certain misdemeanors.  Rule 3.1 states that an officer acting under the rule may detain a person "for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances."

Of course, Rule 3.1 is a state created rule.  As such, it is not necessarily determinative of whether the Fourth Amendment was violated, although it may be considered in determining the reasonableness of an officer's challenged conduct as part of the "totality of the circumstances."

---

[3] While Plaintiff mentions the Arkansas Constitution in his Amended Complaint, he has not provide any legal authority or argument to suggest that his right to be free from unlawful seizure of his person is different or greater under the Arkansas Constitution than the United States Constitution.  Accordingly, the Court will analyze the case under Fourth Amendment principles.

[4] Plaintiff argues that "because Officer Jim Hall had already questioned me and obtained all the information and identification up at the Hwy 333 & Hwy 64 junction" any "further detaining was a violation of clearly established law."  (Pl.'s Aff. at ¶ 15).

However, the Court holds that Rule 3.1 does not apply to this factual scenario. The rule is intended to provide guidance and limitations on when a police officer may decide on his own "to stop and detain" a person in the absence of any other legitimate basis for the stop. The rule does not apply when an officer has an independent reason for stopping a person, such a valid traffic stop or, as here, in response to a dispatcher's call. *See Laime v. State*, 347 Ark. 142, 157 (Ark. 2001)(holding that a police officer's detention of a traffic offender "while he completes certain routine tasks" is unrelated to a Rule 3.1 detention).

Officer Hall did not initially "stop and detain" Plaintiff on his own. It is therefore immaterial whether Officer believed that Plaintiff "had committed or was in the process of committing a misdemeanor involving damages to property or danger of forcible injury to a person," which is the standard under Rule 3.1 for an officer to stop and detain a person in the absence of another legitimate basis for making the stop.

The Court now turns to an analysis of these facts under the Fourth Amendment.

The Fourth Amendment prohibits unreasonable "seizures" of a person. The Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests. Of course, these three categories are not static. An encounter of one kind can escalate to another.

In a consensual encounter no seizure occurs within the meaning of the Fourth Amendment and there can be no constitutional violation. *See Florida v. Royer*, 460 U.S. 491, 497-98 (1983). In an investigative stop, a person is temporarily detained by the police. Such a seizure in that circumstance is lawful as long as the police officer making the stop has an "articulable suspicion that a person has committed or is about to commit a crime." *Id*., at 498. Based on such suspicion, the police may temporarily seize the person and ask them questions

related to the purpose of the stop. *Id*. "An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Id*., at 500.

"An investigative detention may turn into an arrest if it lasts for an unreasonably long time or if it is too intrusive." *Seymour v. City of Des Moines*, 519 F.3d 790, 796 (8th Cir. 2008)(omitting internal citations and quotations). The Supreme Court has held that there is no rigid time limit on an investigatory detention. *U.S. v. Sharpe*, 470 U.S. 675, 685 (1985). In determining whether a period of time is excessive, courts consider the "law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Id*.; *See, e.g.*, *U.S. v. Maltais*, 403 F.3d 550 (8th Cir. 2005)(holding that detention of a suspect for two hours and fifty-five minutes in the back of a patrol car while waiting on a drug dog to arrive did not effect a de facto arrest). At most, Plaintiff was detained for twenty-five minutes before being given a citation and sent on his way. The Court holds as a matter of law, based on the evidence presented, that Plaintiff was not arrested.

Defendants argue that Plaintiff was never seized, but rather, that it was a consensual encounter. Plaintiff argues that he did not feel free to leave and that he was therefore detained. The Court need not resolve this dispute. The Court accepts for purposes of this motion that <u>at some point</u> following Officer Hall's arrival on the scene, the encounter escalated to an investigatory stop during which Plaintiff was detained.[5]

The encounter between Officer Hall and Plaintiff began as a consensual one. Officer Hall was dispatched to the scene on a stalking call. (Hall's Aff. at ¶ 1). When he arrived he found Plaintiff at a busy intersection with a camera. Plaintiff was in a public place, acting strangely, and Officer Hall was justified in approaching him and asking questions, which Plaintiff

---

[5] In the event this case went to trial, this issue would likely be contested.

voluntarily answered.

A consensual encounter does not become a "seizure" unless a "reasonable person" would not feel "free to leave." *Jefferson v. City of Omaha Police Dept.*, 335 F.3d 804, 806 (8th Cir. 2003)(omitting citations and internal quotations). Plaintiff states that he was questioned by Officer Hall at the intersection for "about 10 minutes" before "Officer Hall told me to get in his vehicle." Plaintiff contends that he "felt compelled" to get in Officer Hall's patrol car when instructed to do so. (Pl.'s Aff. at ¶¶ 6, 8). Plaintiff also alleges that he was effectively "seized" at the point at which Officer Hall arrived because one of the officers had either activated his "blue" lights and/or "bleeped" the siren for an instant when they approached the intersection. (Pl.'s Aff. at ¶¶ 4,7). The Court rejects this argument.

Moreover, even if Plaintiff were "seized" when Officer Hall arrived on the scene, such seizure would be lawful and would not require reasonable suspicion. The Court concludes that Officer Hall was justified in detaining Plaintiff until the point at which they both arrived at "Lucky Spot," where Plaintiff's car was parked, for safety reasons. It is not always necessary to make a finding of reasonable suspicion to justify a temporary detention. Rather, "police officers are not only permitted, but expected, to exercise what the Supreme Court has termed 'community caretaking functions.'" *Winters v. Adams*, 254 F.3d 758, 763 (8th Cir. 2001)(omitting citations and internal quotes). In exercising this function, "a police officer may have occasion to seize a person . . . in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity." *Id.* (omitting citations). Officer Hall asserts that he gave Plaintiff a ride to his car for his safety as well as the officer's own safety. After finding Plaintiff with a

camera near a well traveled street,[6] Officer Hall was justified in detaining Plaintiff for the purpose of removing the hazard the Plaintiff presented to himself, to officers, and to passing motorists.[7]

The Court concludes that the earliest point at which Plaintiff was "detained" was after Officer Hall and Plaintiff arrived at "Lucky Stop." Such detention was justified as long as Officer Hall had a "reasonable suspicion supported by articulable facts that criminal activity '[might] be afoot.'" *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The Court has no hesitation in concluding that the required reasonable suspicion existed.

"Reasonable suspicion is based on the totality of the circumstances." *U.S. v. Johnson*, 64 F.3d 1120, 1124 (8th Cir. 1995). Even if Plaintiff's actions were innocent, his behavior "must be considered as a whole and in light of the officers' 'experience and specialized training.'" *U.S. v. Ameling*, 328 F.3d 443, 448 (8th Cir. 2003)(*quoting Arvizu*, 534 U.S. at 273). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *U.S. v. Lyons*, 486 F.3d 367, 372 (8th Cir. 2007). Plaintiff describes the explanations for his behavior he gave Officer Hall as "reasonable" in arguing that Officer Hall should have ended the

---

[6] Officer Hall states that Plaintiff was standing in a busy intersection which served as the exit route for employees leaving Arkansas Nuclear One. (Hall's Aff. at ¶ 5). Plaintiff contends that they "weren't obstructing any traffic or in any danger just standing on the side of the road." (Pl.'s Aff. at ¶ 8). The dispute about where exactly Plaintiff was standing is immaterial. Either way, Officer Hall's statement that he gave Plaintiff a ride to his car for safety reasons is objectively reasonable.

[7] Plaintiff, in responding to interrogatories, stated that he was waving at people driving by and acting friendly "during the entire period of time while [he] was either walking along 64 and/or 333 or standing someplace." (Exh. 2 to Defs.' stmt. of facts, p. 2). Such behavior alone would have justified a police officer stopping to inquire about Plaintiff's reason for being on the highway.

investigative stop sooner. However, Plaintiff's subjective belief as to the reasonableness of his own behavior is entirely irrelevant to the analysis.

By Plaintiff's own estimation, he and Officer Hall "remained at the fishing spot for over 15 minutes or so" before Hall "decided to issue a citation for harassment before deciding to release me from the area." (Pl.'s Aff. at ¶ 9). During this fifteen minute period of time Officer Hall ran registration checks on Plaintiff's vehicle, reviewed photos Plaintiff showed him, listened to Plaintiff's additional explanations about his apparent obsession with Mavis Neal, and spoke with the prosecuting attorney, at a minimum. There is no evidence before the Court to permit a conclusion that Officer Hall detained Plaintiff longer than necessary to effectuate the lawful purpose of the stop, which was to complete the investigation into the stalking claim.

The Court concludes that any seizure by Officer Hall of Plaintiff was reasonable and lawful. Since Officer Hall did not violate Plaintiff's constitutional rights, Chief Demmit's training of Officer Hall could not have been inadequate such that it too violated Plaintiff's constitutional rights.

## CONCLUSION

The Court concludes that Plaintiff has failed to present facts to support the claimed violation of his Fourth Amendment rights by either of the remaining Defendants to this action. Accordingly,

IT IS HEREBY ORDERED THAT Defendants' Motion for Summary Judgment (# 41) be, and it is hereby, GRANTED. Judgment will be entered separately.

IT IS SO ORDERED this   24th   day of June, 2007.

                                               /s/Garnett Thomas Eisele
                                               UNITED STATES DISTRICT JUDGE